UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAN BESTWICK and ROBERT RUTLEDGE, <br><br> Plaintiffs, <br><br> v. <br><br> NEWMAR CORPORATION, <br><br> Defendant. | CAUSE NO. 3:19-CV-570 DRL |

OPINION & ORDER

Jan Bestwick and Robert Rutledge purchased a motorhome manufactured by Newmar Corporation. They later identified several defects that required repairs. The unit came with a twelve-month limited warranty. When certain defects persisted, the couple filed suit against Newmar for breaching implied and express warranties, including under the Magnuson-Moss Warranty Act (MMWA), and violating the Arizona Consumer Fraud Act (ACFA). Today Newmar seeks summary judgment on all claims. The court grants the company's motion.

BACKGROUND

On September 29, 2018, Ms. Bestwick and Mr. Rutledge entered into a purchase agreement with Freedom RV to buy a 2018 Newmar New Aire motorhome costing approximately $306,000. Freedom RV purchased the motorhome from Newmar months before the sale to Ms. Bestwick and Mr. Rutledge.

The couple researched motorhomes for ten years before choosing one. They focused on Newmar motorhomes because of its family-owned business, advertisements, workmanship, and warranties. They looked at brochures and Newmar's website, though the model they bought wasn't available for sale when they visited the website. They didn't speak to any Newmar business

representatives except for one conversation about whether the motorhome came with a television and solar power.

Newmar offered a twelve-month limited warranty with the unit. The dealer, Freedom RV, told Ms. Bestwick and Mr. Rutledge prior to purchase that the motorhome came with an excellent Newmar warranty that would cover any issue that arose, and the couple wouldn't have any issues with their motorhome.

At the sale, Mr. Rutledge signed the Freedom RV purchase agreement. The Freedom RV salesman assured the couple that the warranty was with the paperwork in the motorhome. A warranty registration dated November 1, 2018 reflects a signature, though Mr. Rutledge says someone forged it. Neither Ms. Bestwick nor Mr. Rutledge received or reviewed the Newmar warranty until April or May 2019—over seven months after the deal. At his deposition, Mr. Rutledge still could not be sure that the Newmar warranty was the one that came with his unit.

The motorhome was delivered by Newmar to Freedom RV in June 2018. Before the sale to Ms. Bestwick and Mr. Rutledge, the couple identified several defects. They completed the sale nonetheless and left it at Freedom RV for repair. On November 5, 2018, they returned to pick up the motorhome and discovered it wasn't fixed. A month later, they took the motorhome back for further repairs, including an issue with the SilverLeaf electrical system. They returned for repairs at least three more times. Mr. Rutledge was unsure who paid for the warranty service during these repair attempts.

After the motorhome was out of service for more than 100 days, Ms. Bestwick and Mr. Rutledge sent Newmar a letter in March 2019 about the defects and requested their money back. In response, Newmar offered to extend the limited warranty for three months. Ms. Bestwick and Mr. Rutledge filed suit.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present evidence on which a reasonable jury could find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011). When a factual record taken as a whole could not lead a rational jury to find for the non-moving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

DISCUSSION

A.   *The Court Grants Summary Judgment on the Implied Warranty Claims.*

Ms. Bestwick and Mr. Rutledge claim Newmar breached implied warranties—fitness for a particular purpose and merchantability. Under Arizona law [*see* ECF 34], privity is required to maintain an implied warranty action. *Flory v. Silvercrest Indus. Inc.*, 633 P.2d 383, 387-88 (Ariz. 1981); *Chaurasia v. GMC Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006); *see also Reger v. Ariz. RV Ctrs, LLC*, 2017 U.S. Dist. LEXIS 132906, 5-6 (N.D. Ind. Aug. 21, 2017). Both sides agree privity is lacking, so summary judgment is warranted.

3

B.  *The Court Grants Summary Judgment on the Express Warranty Claim.*

Ms. Bestwick and Mr. Rutledge pursue only a UCC-based express warranty claim. Under Arizona law, they must show that an express warranty existed, the company failed to perform pursuant to that express warranty, and the couple suffered resulting damages. *See* Ariz. Rev. Stat. § 47-2313(A). An express warranty must become part of the basis of the bargain. Ariz. Rev. Stat. § 47-2313(A)(1).

States differ as to whether reliance is necessary for a warranty to become part of the basis of the bargain. Arizona, adopting UCC § 2-313, requires a measure of reliance. *See Earle M. Jorgenson Co. v. Tesmer Mfg. Co.*, 459 P.2d 533, 536 (Ariz. Ct. App. 1969) (affirmation of fact "was clearly intended that defendant should rely thereon and the defendant did rely thereon"); *Hix v. Bos. Sci. Corp.*, 2019 U.S. Dist. LEXIS 197384, 15 (D. Ariz. Nov. 14, 2019) (allegations that patient "relied" on medical company's representations sufficient to overcome motion to dismiss express warranty claim). This stands in line with prevailing UCC understandings of the basis of the bargain. Among UCC states, whether representations inform the parties' bargain is a question of fact. *McDonnell Douglas Corp., v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (California law).

The question then is whether Ms. Bestwick and Mr. Rutledge relied on Newmar's express warranty to the extent that a reasonable jury could find it was part of the basis of the bargain for this motorhome. Arizona law answers that question no.

In *Flory*, 633 P.2d at 385, a couple sued a mobile home manufacturer on an express warranty claim. The dealer told them a one-year warranty came with the unit but never gave them the warranty until after delivery—over a year after sale. *Id.* at 386. The jury found for the buyers on the warranty claim, but the Arizona Supreme Court reversed and remanded for a new trial, *id.* at 385, 391, specifically recognizing "[t]his written warranty made by [the manufacturer] to the 'owner' of the mobile home does not qualify as an express warranty under A.R.S. § 44-2330 because it was not made

4

to the buyers [] by the seller [] as part of the basis of their bargain, nor was it part of the basis of the bargain of a sales contract between [the manufacturer] and [the buyers]," *id.* at 390.[1]

This case speaks volumes as jury verdicts are reviewed on appeal by drawing the evidence and inferences in a light most favorable to upholding the judgment, *Mammo v. State*, 675 P.2d 1347, 1349 (Ariz. Ct. App. 1983), affirming the judgment if any substantial evidence exists that permits reasonable persons to reach the same result as the jury, *Hutcherson v. City of Phoenix*, 961 P.2d 449, 451 (Ariz. 1998), *overruled in part on other grounds by State v. Fischer*, 392 P.3d 488, 494 (Ariz. 2017). Even skewed toward the jury verdict favorable to the buyers, no reasonable jury could find for the buyers on an express warranty claim given this belated introduction of a warranty—even when the buyers knew generally about its existence at the time of sale.

Similarly, the dealer here told Ms. Bestwick and Mr. Rutledge before the sale that the motorhome came with a twelve-month warranty from Newmar. The dealer said the warranty was excellent and would cover any issues that arose. In one breath, Ms. Bestwick and Mr. Rutledge seem to say they relied on the dealer's representation that the motorhome came with a twelve-month warranty—important to them because it showed that Newmar stood behind its units—but in the next breath disavow the warranty in the manner that *Flory* addresses.

The couple say they never received nor reviewed the Newmar warranty at the time of the sale and never signed the warranty registration. No one from Newmar made any representations about the warranty to them, or made any other express warranty that they identify. Any "affirmation that forms the basis of an express warranty must be between the seller and the buyer." *Ramirez v. Medtronic Inc.*, 961 F. Supp.2d 977, 1001 (D. Ariz. 2013) (finding that patient's express warranty claim against distant manufacturer could not survive because representations came from intermediary doctor only); *accord*

---

[1] At the time of this decision, Ariz. Rev. Stat. § 44-2330 governed express warranties. Express warranties are currently found under Ariz. Rev. Stat. § 47-2313. The relevant language remains identical.

*Hamilton v. TBC Corp.*, 328 F.R.D. 359, 387 (C.D. Cal. 2018) (Arizona law). The couple only first saw Newmar's warranty in April or May 2019—approximately seven months after the sale.

The couple argues nevertheless that they relied on Newmar's warranty. They say "discovering" the written warranty in April or May 2019 was just confirmation of what the parties knew earlier. The facts belie this position. Mr. Rutledge, for instance, remained unsure—even as late as his deposition—if the Newmar warranty was the warranty that came with his motorhome [ECF 39-3 at 23-24]. He disavowed the warranty's limitations as something outside his agreement [*id.* 59] and lacked knowledge of who paid for his motorhome's warranty service [*id.* 24]. He said he never signed the registration. He denied the signature as his. No reasonable jury could thus find that Newmar's written warranty formed part of the basis of the bargain sufficient to sustain a UCC-based express warranty claim. *See Flory*, 633 P.2d at 385, 390-91; *Ramirez*, 961 F. Supp.2d at 1001.

The couple alternatively contends that Newmar should be estopped from arguing a warranty doesn't exist. Equitable estoppel "precludes a party from asserting a right inconsistent with a position previously taken to the prejudice of another acting in reliance thereon." *Unruh v. Indus. Comm'n*, 301 P.2d 1029, 1031 (Ariz. 1956). "The three elements of equitable estoppel are traditionally stated as: (1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 959 P.2d 1256, 1267-68 (Ariz. 1998). Newmar offered a twelve-month limited warranty, paid for services under the warranty, and even offered to extend its length—but all based on the understanding that Mr. Rutledge's signature on the warranty registration was accurate and represented his agreement to the creation and terms of the express warranty, including any limitations.

If the written warranty was outside the deal, nothing foreclosed Newmar from altruistically providing repairs to the couple, if nothing else for goodwill. Providing repairs at no cost isn't

6

inconsistent with an absent warranty. After all, the couple had identified to the dealer numerous issues for repair before consummating the sale, which the dealer promised to address. Nothing on this record demonstrates that the couple relied on Newmar's position. For instance, the record seems devoid of any commitment by the couple to Newmar's offer to extend a warranty, an offer that would necessarily include their commitment to both the warranty's protections and its disclaimers.

Nor have they suffered injury because of Newmar's position today. Newmar has not repudiated its prior conduct. Newmar expected the couple's compliance with its warranty's terms, but that isn't forthcoming. To the extent repudiation has occurred, it occurred first by Ms. Bestwick and Mr. Rutledge. Warranties serve multiple purposes: they provide remedies to consumers, market a product for the company, and announce the company's protections. Buyers generally cannot have their cake and eat it too by claiming the warranty's advantages and disclaiming its disadvantages, *cf. Mathews v. REV Rec. Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019) (Indiana law), and the buyers here have not established any right under Arizona law to pin the company to its warranty, only then to permit them to continue to disavow its application and their agreement to its full terms.

Put this in practical terms within the UCC and MMWA. There was no meeting of the minds—between this couple and Newmar—as to the material terms of a warranty. *See* Ariz. Rev. Stat. § 47-2313(A). The MMWA ensures that any written warranty that forms the basis of a consumer product sale contain certain materials terms, but on this record none of these terms formed part of the couple's deal. *See* 15 U.S.C. § 2302(a) (requiring warranties to have certain contents, including the parts covered, statement of remedies if parts are nonconforming, exclusions, procedures for obtain remedies, and other items). What would be covered? They don't know. They know only what little the dealer told them, but no warranty or statement from Newmar. What would be excluded? They don't know. What remedies would be provided? They don't know. What would be the process for making a warranty claim, who would pay for what, what performance promises could they expect, what remedies might

be waived, what timetable would they need to make a claim, and what of any other number of material terms? They likewise don't know. More important, they did not know these answers at the time of the sale, and thus formed no precise expectation on which to rely as part of the sale. The warranty consequently did not become the basis of the bargain under Arizona law's interpretation of this standard. *See Flory*, 633 P.2d at 385, 390-91; *Ramirez*, 961 F. Supp.2d at 1001. They cannot vacuously claim today that everything was covered—based only on what the dealer may have said—but without any understanding of Newmar's written warranty and Newmar's promises and disclaimers.

The couple has not identified any other basis for an express warranty claim. Nor on this record have they demonstrated that they committed to a warranty extension that might have had independent consideration. The court must enter summary judgment accordingly. The MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for some state claims." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). A MMWA claim rises and falls with the underlying state law claim, so the loss of the implied and express warranty claims compels summary judgment on the MMWA vehicle for these claims.

        C.        *The Court Grants Summary Judgment on the Arizona Consumer Fraud Act Claim.*

Ms. Bestwick and Mr. Rutledge pursue a claim under the ACFA.[2] "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

---

[2] Though the court grants summary judgment on all state law claims brought through the vehicle of MMWA, the court maintains jurisdiction of the remaining state law claims because diversity jurisdiction was properly pleaded. *See* 28 U.S.C. § 1332.

Newmar contends that any statements in its manual, advertisements, or brochures were mere puffery and that the buyers have not demonstrated a material omission. The company says it was not involved in the sale in a way that these buyers relied on its materials. The company instead says Ms. Bestwick and Mr. Rutledge were subsequent purchasers who have no right, on this record, to a direct action under the ACFA against it. On this latter point, the company is right. Subsequent purchasers cannot proceed with a private cause of action under the ACFA when no misrepresentation or omission was made in connection with the sale or advertisement. *State Farm Fire & Cas. Co. v. Amazon.com Inc.*, 2018 U.S. Dist. LEXIS 52742, 11-13 (D. Ariz. Mar. 29, 2018); *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 453-54 (Ariz. Ct. App. 2012), *vacated in part on other grounds*, 306 P.3d 1, 4 (Ariz. 2013), and *overruled on other grounds by Sirrah Enters., LLC v. Wunderlich*, 399 P.3d 89, 93-94 (Ariz. 2017).

The ACFA requires that the alleged misrepresentations or deceptive acts be made "in connection with the sale or advertisement." Ariz. Rev. Stat. § 44-1522(A). Arizona courts have concluded that the "purpose of the [ACFA] is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Sullivan*, 290 P.3d at 454. "Because a subsequent purchaser is not a party to the original transaction and therefore would not encounter this 'disproportionate bargaining power,' such a purchaser is not within the class of consumers intended to be protected by the implied private cause of action under the [ACFA]." *Id.*

In *Sullivan*, buyers who bought a home from the original purchaser alleged the homebuilder violated the ACFA. *Id.* at 448. Pulte Home Corporation built the home within a hillside community. The original purchaser thereafter sold the home to the Sullivans. Pulte had no contract or direct contact with the Sullivans. The Sullivans claimed that they relied on Pulte's reputation and on marketing statements on Pulte's website touting the quality of its homes. The Arizona Court of Appeals held that the buyers, as subsequent purchasers, weren't placed in an unfair bargaining position

9

vis-à-vis the homebuilder (Pulte) because they had no transaction together and thus no misrepresentations were made in connection with the sale. *Id.* at 454. The court concluded that a deceptive act in connection with an advertisement also would need to relate to a sale between the parties. *Id.* "Arizona courts have not extended the private cause of action under the [ACFA] to subsequent purchasers and we decline to do so here." *Id.*

The only seeming limitation to *Sullivan* concerns those advertisements or materials provided as part of the sale transaction and on which a buyer relies. *See Watts v. Medicis Pharm Corp.*, 365 P.3d 944, 953 (Ariz. 2016); *accord State Farm*, 2018 U.S. Dist. LEXIS 52742 at 11-13; *see also* Ariz. Rev. Stat. § 44-1522(A) (must be "omission of material fact with intent that others rely"); *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) ("injury occurs when a consumer relies, even unreasonably"); *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980). In addition to reliance, when a claim hinges on an omission, a plaintiff also must prove the omission was material, *see Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000); *Schellenbach v. GoDaddy.com, LLC*, 2017 U.S. Dist. LEXIS 105115, 14-15, 18-20 (D. Ariz. July 7, 2017). An omission is material if it is "'logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction.'" *Schellenbach*, 2017 U.S. Dist. LEXIS 105115 at 18 (quoting *Demaree v. Wal-Mart Stores, Inc.*, 511 Fed. Appx. 660, 661 (9th Cir. 2013)). Buyers need not prove an intent to deceive. *See State ex rel. Corbin v. Tolleson*, 773 P.2d 490, 503 (Ariz. Ct. App. 1989).

In *Watts*, for instance, the Arizona Supreme Court permitted a patient's ACFA claim against a distant drug manufacturer—even without a direct transaction—because she received at the time of sale the drug manufacturer's "MediSAVE" card that spoke materially to the drug's safety. *Watts*, 365 P.3d at 947. Ms. Bestwick and Mr. Rutledge have designated no such evidence to oppose summary judgment today. They obtained the owner's manual and warranty only after the sale transaction was consummated. *See Kuehn,* 91 P.3d at 352 (no ACFA claim because buyers "received the appraisal report

10

only after they were already contractually bound to purchase the real estate"). They reviewed Newmar's website before the sale transaction but point to nothing by way of an omission specific to this motorhome model on the website (not least because this model wasn't on there). They mention advertisements generically but point to none that contain a material omission on which they relied. Newmar was not part of the sales transaction. Newmar had no contact with this couple vis-à-vis the sale.[3] Newmar received no proceeds from the sale. Arizona law forecloses mere reliance on a brochure, warranty, owner's manual, or website generically outside the sales transaction, *see In re Ariz. Theranos, Inc., Litig.*, 256 F. Supp.3d 1009, 1028 (D. Ariz. 2017) (citation omitted), or from after-the-fact receipt, *see Kuehn*, 91 P.3d at 352. Being divorced from the subsequent transaction between the dealer and this couple, on this record Newmar cannot be reasonably said to have omitted information that was material to these buyers, or that they indeed relied on in consummating the deal.

The couple instead claims the company should have disclosed that defects could happen within the first year. Even if non-descript portions of the company's brochures or website could be said to be part of the sales transaction, and that seems unreasonably tenuous at best, this highly generalized argument lacks the teeth of a material deceptive omission. Defects may well occur in any product, and consumers understand this truism as a rather open and obvious risk of product purchases. Hence companies offer, and consumers often ensure they obtain, warranties or other assurances that they will have a remedy for any defects that may arise. Newmar admitted in deposition that repairs during the first year, though not expected, would not be unusual. Ms. Bestwick and Mr. Rutledge have not pointed to any evidence that Newmar knew of a particular defect but omitted or concealed that fact in inducing the couple to buy the motorhome. Indeed, much to the contrary, the couple admits that the dealer said a twelve-month warranty existed and would cover defects—

---

[3] The couple had contacted Newmar earlier in reference to only the standard equipment on the unit (television and solar power).

11

altogether a forecast that defects in fact might arise. The argument here thus hardly supports an omission, much less a material one part and parcel of this sale.

These points are enough, but more there is. The dealer and couple identified certain items for repair before the couple ever consummated their deal. The notion that they never knew about certain defects, or the possibility of defects, or that somehow Newmar knew about specific defects and omitted information about them, seems soundly gutted by this undisputed fact. The couple proceeded with the purchase nonetheless. Later issues with this unit may have been broader in scope than those identified at the time of sale; but again the point is that Newmar never omitted material information about the possibility of defects in the first year, nor could this couple have relied on such an omission based on what they already knew at the time of sale. The court must grant summary judgment accordingly.

D. *These Buyers Have Not Developed Any Other Claim.*

This discussion addresses all the claims that Ms. Bestwick and Mr. Rutledge advance. "'[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.'" *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)). Arizona recognizes a non-UCC based express warranty claim—one housed in contract rather than in the UCC—but this couple, and perhaps wisely so, have not pursued such a claim in opposing summary judgment. *See Flory*, 633 P.2d at 390. In but one sentence, they recite their complaint about the specter of a separate contract claim, but develop no argument to oppose summary judgment, particularly when they cannot merely rely on their pleading. *See* Fed. R. Civ. P. 56; *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

It would seem of no moment. Arizona law appears to require the express warranty to have been part of the motorhome's sale, including for this non-UCC contract theory. *See Flory*, 633 P.2d at 390 ("it might not constitute an express warranty outside the U.C.C. because the record indicates it was not given to [the buyer] until sometime after the sale and delivery of the mobile home"). Ms. Bestwick and Mr. Rutledge would also need to prove "an offer, an acceptance, consideration, and sufficient specification of terms," *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975); but, when Newmar had no direct involvement in this sale, that would prove difficult if not impossible on this record, particularly in establishing any meeting of the minds on sufficient terms and consideration. The court must grant summary judgment on all claims.[4]

## CONCLUSION

Accordingly, the court GRANTS Newmar's summary judgment motion as to all claims [ECF 38] and DENIES AS MOOT the motion to exclude Thomas Bailey's proposed expert testimony [ECF 43].

SO ORDERED.

December 17, 2021                                         *s/ Damon R. Leichty*
                                                                      Judge, United States District Court

---

[4] Based on these rulings, the court need not address any other argument, including those pertaining to the enforcement of certain remedies, such as rescission, revocation of acceptance, and consequential damages.